# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| ADRIAN DELK, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 2:17-cv-02062-TLP-tmp |
| v. ) | |
| ) | |
| GRADY PERRY, ) | |
| ) | |
| Respondent. ) | |

## ORDER OF DISMISSAL, ORDER DENYING CERTIFICATE OF APPEALABILITY, ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH, AND ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner Adrian Delk[1] sued pro se under 28 U.S.C. § 2244. (ECF No. 1.) He amended his petition in early 2018. (ECF No. 40.) Respondent Grady Perry filed the state court record (ECF No. 43), and then answered the amended petition[2] (ECF No. 77). Petitioner replied to that answer. (ECF No. 78.)

The issues Petitioner raises in his amended habeas petition fall into two categories: (1) whether the procedural default doctrine bars him from bringing a claim, and (2) whether his claim presents a question of federal law. For all the reasons below, the Court **DISMISSES** the petition.

---

[1] Delk is a state prisoner, Tennessee Department of Correction ("TDOC") prisoner number 532927. He is currently on parole.

[2] Although Respondent responded to the original petition (ECF No. 43), the amended petition is the operative pleading here.

# STATE COURT PROCEDURAL HISTORY

In May 2014, Petitioner pleaded guilty to one count of aggravated assault and one count of solicitation to commit first-degree murder in the Shelby County, Tennessee Criminal Court. (*Id.* at PageID 578.) The trial court sentenced him to an effective sentence of 12 years in prison. (*Id.* at PageID 580–81.) Petitioner did not appeal that result.

He did however petition the trial court pro se under the Tennessee Post-Conviction Procedure Act, Tennessee Code Annotated §§ 40-30-101–122. (*Id.* at PageID 582–90.) In early 2015, Petitioner's appointed counsel amended that petition (*id.* at PageID 599–607) and supplemented it (*id.* at PageID 608–09). The post-conviction court held an evidentiary hearing and denied relief in an order entered in June 2015. (*Id.* at PageID 613–18.) Petitioner appealed that decision (*id.* at PageID 620), and the Tennessee Court of Criminal Appeals ("TCCA") affirmed, *Delk v. State*, No. W2015-01246-CCA-R3-PC, 2016 WL 4189718 (Tenn. Crim. App. Aug. 5, 2016), *perm. app. denied* (Tenn. Oct. 21, 2016).

Petitioner then moved to correct an illegal sentence in Shelby County Criminal Court. (ECF No. 43-11 at PageID 942–43.) The trial court denied relief in late 2015. (*Id.* at PageID 945.) Petitioner appealed that order (*id.* at PageID 946–47), and the TCCA dismissed the appeal because Petitioner failed to file a brief, *State v. Delk*, No. W2015-02432-CCA-R3-CD (Tenn. Crim. App. May 27, 2016). (ECF No. 43-12 at PageID 951.)

Later Petitioner sought habeas relief in Hardeman County Circuit Court. (ECF No. 43-13 at PageID 957–61.) That court denied relief in an order entered June 2016. (*Id.* at PageID 1028–30.) Petitioner appealed (*id.* at PageID 1031–32), alleging (1) that the State prosecutor breached the plea agreement by choosing an incorrect range of offense dates for the judgment for

solicitation to commit first degree murder; (2) that the State prosecutor's error led to a breach of the plea agreement because it affected his sentencing credit; (3) that TDOC was not properly awarding post-judgment sentencing credits; (4) that there was insufficient proof to support the conviction for solicitation; and (5) that his indictment for solicitation was void because the grand jury returned it before the end of the crime and failed to provide notice. *Delk v. Perry*, No. W2016-01394-CCA-R3-HC, 2017 WL 5952935 (Tenn. Crim. App. Nov. 30, 2017).

The TCCA determined that Petitioner waived the indictment claim because he failed to provide adequate documentation, that he waived his challenge to the sufficiency of the evidence by pleading guilty, and that the remaining issues were unavailable in a habeas corpus petition. (*Id.* at *2–*3.) On post-conviction appeal, the TCCA reviewed the factual basis for Petitioner's guilty pleas:

> Had this matter gone to trial as to [Case No.] 13-04041, the State would have shown that on or about January 13th of 2013 in the area of Covington Pike and Stage Road, [Petitioner] was involved in a physical altercation with his child's mother, Genesis Watson. During the altercation, [Petitioner] displayed a pocketknife and stabbed [the victim] six times in the lower abdomen, back and hands. [The victim's] seven year old child and the couple[']s two month old child w[ere] in the rear passenger seat of the vehicle during the assault. [The victim] was taken to the Med by [Petitioner] to be treated for her wounds and listed in critical condition. [Petitioner] fled the scene before police could apprehend him at the hospital. This all happened in Memphis and Shelby County.
>
> As to [Case No.] 13-05543, the State would have shown that on or about— between October—between January 31st and October 30–1st of 2013, . . . Mr. Larry Lack[l], was approached by [Petitioner] who is an inmate in the Shelby County Jail and asked to provide him with information on hiring an individual to kill his estranged girlfriend he named as Genesis. [Petitioner] wanted to kill Genesis hoping her death would facilitate his getting out of jail and obtaining custody of his child. [Petitioner] went on to inform Mr. Lack[l] of the details of the aggravated assault and criminal attempt murder first that he was charged with on January 31st and said that stabbing [the victim] . . . felt like going through jello.

*Delk v. State*, 2016 WL 4189718, at *1.

The TCCA post-conviction opinion summarized the evidence presented at the post-conviction hearing and the decision of the post-conviction trial court:

> At the evidentiary hearing, Memphis Police Officer Gladys Burton testified that she did not know whether the victim was under the influence of any prescription painkillers at the time she interviewed the victim following the victim's release from the hospital.
>
> Shelby County Sheriff's Department Deputy Kenneth Boykin, who worked in the Gang Unit inside the jail, testified that inmate Larry Lackl, a trash man at the jail, informed him that he had a letter and information about a "murder-for-hire" involving Petitioner. As he recalled, Mr. Lackl wanted some leniency for his pending drug charges in Mississippi in exchange for turning over the letter. Deputy Boykin acknowledged it was possible that Mr. Lackl had recovered the letter from a trashcan and said that Petitioner's trial counsel never talked to him about the case. On cross-examination, he agreed that his involvement in the investigation was limited, as he simply passed on Mr. Lackl's information to his captain, who, in turn, contacted investigators.
>
> The victim, Genesis Watson, testified that she was under the influence of heavy prescription painkillers at the time she gave her statement to police. She described the time of the aggravated assault as a "blackout period" and said that, had she testified at trial, she would "[n]ot really" have been able to say who had stabbed her because she did not "remember the whole incident." She never talked to trial counsel about the case, and he never attempted to contact her. On cross-examination, she testified that she did not remember having told the police in her statement that Petitioner stabbed her with a pocketknife. She acknowledged, however, that she identified Petitioner at the preliminary hearing as the man who had stabbed her.
>
> Trial counsel, a public defender with the Shelby County Public Defender's Office, testified that he was appointed to represent Petitioner on his initial indictment on September 12, 2013. He said he learned of the impending second indictment while Petitioner was at Middle Tennessee Mental Health Institute undergoing a mental evaluation. Petitioner first appeared with him in court on the solicitation case on December 9, 2013. During the course of his representation on the cases, he met with Petitioner four or five times at the jail and also spoke with him at length at each court date.
>
> Trial counsel testified that he did not think it either necessary or helpful to interview the victim, explaining that he was aware of her statement and her preliminary hearing testimony and had been informed by Petitioner's mother, who kept in contact with her, that the victim was "upset" and "still angry" at Petitioner. Thus, he felt it wise to "let sleeping dogs lie." He also found it unnecessary to interview Mr. Lackl or any of the officers involved in the case, testifying that he

4

did not "see any basis to get any information that wasn't already provided, either through [Petitioner] or the discovery."

Trial counsel testified that Petitioner's mental evaluation came back showing no support for a diminished capacity defense. In addition, Petitioner appeared in his conversations with counsel to be well informed and to understand "exactly what was going on in his case." Among other things, he discussed with Petitioner the pros and cons of the case, the range of punishments Petitioner faced, Petitioner's possibility of being convicted at trial, and Petitioner's right to testify in his own defense. He did not advise Petitioner to plead guilty, but instead just explained his options to him.

Trial counsel testified that Petitioner wanted to go to trial on the solicitation case first. The State, however, had "intimated to [trial counsel] that they were going to go to trial on the criminal attempt murder two case first." Trial counsel said he informed Petitioner and Petitioner then "made a decision based on that [fact] and the reductions" that counsel was able to negotiate for him. Despite his decision, Petitioner was still reluctant when it came down to entering his pleas and counsel obtained a two-day continuance, from February 4 to February 6, for him to make the decision. On February 6, 2014, Petitioner was still expressing some reluctance but, after talking to his mother, ultimately entered his pleas.

Trial counsel testified that he did not tell Petitioner that he should plead guilty to avoid angering the trial judge and in no way pressured him into entering his pleas. Petitioner did not appear to be exhausted or under the influence of either drugs or alcohol when he spoke with him.

On cross-examination, trial counsel characterized the contents of the letter in Petitioner's solicitation to commit first degree murder case, which had Petitioner's fingerprints on it, as "pretty damning," testifying that it included a lot of specific details, such as biographical information about the victim and instructions on how to lure her to a murder location, how to kill her, and where to retrieve payment. He said he was very concerned that information about the attempted murder case would be introduced at the solicitation case and that the jury "might believe that [Petitioner] wrote that letter with the intent to kill this lady based on not having her testify against him at a trial."

Trial counsel testified that the prosecutor's original offer was eight years on the criminal attempt second degree murder charge. He said the prosecutor was reluctant to reduce it, but after much pleading on his part, she agreed to the ultimate deal to which Petitioner pled, with Petitioner to serve consecutive sentences of four years for aggravated assault and the minimum of eight years for solicitation to commit first degree murder. He kept Petitioner fully informed of the plea negotiation process and each offer that was made. Finally, counsel testified that Petitioner's pleas were "[a]bsolutely" freely, voluntarily, and knowingly entered.

5

Petitioner testified that that he felt that he had no choice other than to plead guilty because trial counsel told him that he was going to lose at trial and that he would receive "between twenty-four and thirty years" for each conviction. Trial counsel also told him that he was angering the trial judge by "dragging the case for so long." Petitioner said that the night before he entered his pleas, his cellmate had given him a Suboxone strip, a drug used for "coming off heroin," and that he was still under its influence at the time he pled guilty. In addition, the trial court never asked him at the guilty plea hearing whether he was entering his pleas "without threats or pressures of any kind."

Petitioner testified that he did not believe that trial counsel properly investigated the facts or was prepared to take the cases to trial. He said counsel spoke with him for only seven or eight minutes each time during his two visits with him at the jail and only two to three minutes at each court date. Counsel did not file his requested "motions to dismiss things" and did not make the victim or Mr. Lackl available for Petitioner to cross-examine. In short, he felt that he was pressured into pleading guilty by counsel's lack of preparation and by counsel's and the trial court's telling him of the excessive number of years he would serve if he were convicted of the offenses at trial.

Petitioner testified that approximately two months after he entered his pleas, he received in the mail a sworn affidavit from Larry Lackl in which Mr. Lackl explained that he had set up Petitioner in the murder for hire case by advising him that the best way to deal with his anger at the victim was by writing a "fake hit" letter. In the statement, Mr. Lackl said that he retrieved the "fake hit" letter from the trash after Petitioner threw it away and then used it in an attempt to negotiate for the State to assist in having Mr. Lackl's "bogus aggravated burglary and drug charges" in Mississippi dismissed.

Petitioner identified the purported sworn affidavit of Mr. Lackl, which was introduced as an exhibit to the hearing. He said he had not given it to post-conviction counsel until about a week before the present evidentiary hearing because "the talk in prison is don't feed the lawyers everything at one time because you don't know if they're working with the prosecutors or against the prosecutor[.]" Petitioner denied that he had created the document himself or requested anyone else to create it for him. He said that he had written the fake letter in order to "release [his] emotions" as he had been taught in "MRT" classes.

On cross-examination, Petitioner acknowledged the letter contained an extremely detailed seven-step list of actions to identify and lure the victim, execute the murder, and receive payment for the hit. He said he pled guilty to the offenses because he did not "want to serve the rest of [his] life in the penitentiary" and did not have the choice to take just the solicitation case to trial, as he wanted. He also acknowledged that he responded in the affirmative when the trial court asked if he was entering his pleas freely and voluntarily.

Sergeant Israel Taylor of the Memphis Police Department Sex Crimes Bureau, the lead investigator on Petitioner's solicitation to commit first degree murder case, identified the statement he had taken from Mr. Lackl. He agreed that Mr. Lackl said in the statement that he had instructed Petitioner on how to "initiate the assassination-for-hire process" and had lied to Petitioner about the steps he was taking to find someone to execute the crime. He also agreed that Mr. Lackl told him that Petitioner mentioned "want[ing] . . . dead" one of the investigating officers, "Sergeant Burton," whom Petitioner referred to as "the same redneck who took his bulletproof vest," but that "[Petitioner] did not have any money for it." Sergeant Taylor acknowledged that Sergeant Burton was an African-American woman rather than a Caucasian man but explained that, in his experience, it was not uncommon for defendants to get names confused. Finally, Sergeant Taylor testified that he had been informed that morning that Mr. Lackl had committed suicide. On cross-examination, Sergeant Taylor testified that he believed Mr. Lackl's account of the murder for hire and took steps to protect the victim.

In its written order denying post-conviction relief, the court found, among other things, that "the plea colloquy clearly established that on multiple occasions Petitioner assured the Court that the plea was being entered freely and voluntarily" and that there was "nothing to support any assertion that Petitioner was not clear-headed and competent." The court further found that Petitioner failed to show that trial counsel was deficient in his performance.

*Id.*, at *2–*4.

## **LEGAL STANDARDS**

Federal courts may issue habeas corpus relief for persons in state custody under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal court has limited authority however and may grant that relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before a federal court may consider a request for habeas relief by a state prisoner, the court must examine the state court record for specific information.

**I.     Exhaustion and Procedural Default**

A federal court may not grant a writ of habeas corpus for a state prisoner unless, with a few exceptions, the prisoner has exhausted state remedies by presenting the same claim to the state courts under 28 U.S.C. § 2254(b) and (c). *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Petitioner must "fairly present"[3] each claim to all levels of state court review, including the state's highest court on discretionary review, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004), unless the state has explicitly disavowed state supreme court review as an available state remedy, *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999). In Tennessee, Supreme Court Rule 39 eliminated the need to seek review in its Supreme Court to "be deemed to have exhausted all available state remedies." *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003); *see Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010). Another hurdle for state prisoners is the procedural default doctrine.

The procedural default doctrine is much like the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the petitioner's claim is then barred from seeking federal review by the procedural default doctrine. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977); *see Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim

---

[3] To exhaust a claim, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (internal citation omitted). Nor is it enough to make a general appeal to a broad constitutional guarantee. *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.") (internal quotation marks and citation omitted)).[4]  In general, a federal court "may only treat a state court order as enforcing the procedural default rule when it unambiguously relied on that rule." *Peoples v. Lafler*, 734 F.3d 503, 512 (6th Cir. 2013).

If the procedural default doctrine bars a claim at the state level, the petitioner must then show cause to excuse his failure to present the claim and actual prejudice from the constitutional violation or that a failure to review the claim will lead to a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 320–21 (1995); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To make the latter showing, the petitioner has to show that a constitutional error has probably led to the conviction of a person who is innocent of the crime. *Schlup*, 513 U.S. at 321; *see also House v. Bell*, 547 U.S. 518, 536–39 (2006) (restating the ways to overcome procedural default and further explaining the actual innocence exception).

## II. Merits Review

Under § 2254(d), where a state court decided a claim on the merits, a habeas petition in federal court should only be granted if resolving the claim:

(1)   resulted in a decision that was contrary to, or involved in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[4] The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits. *Walker*, 562 U.S. at 315.  A state rule is an "adequate" procedural ground if it is "firmly established and regularly followed." *Id.* at 316 (quoting *Beard v. Kindler*, 558 U.S. at 60–61 (2009)).  "A discretionary state procedural rule . . . can serve as an adequate ground to bar federal habeas review . . . even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Id.* (quoting *Kindler*, 558 U.S. at 54) (internal quotation marks and citations omitted).

9

28 U.S.C. § 2254(d)(1)–(2). Petitioner carries the burden of proof on this "difficult to meet" and "highly deferential [AEDPA] standard," which "demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Under § 2254(d)(1) the court's review is limited to the record in the state court that decided the claim on the merits. *Cullen*, 563 U.S. at 182. A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The state court's application of clearly established federal law must be "objectively unreasonable" for the writ to issue. *Id.* at 409. The writ may not issue only because the habeas court, "in its independent judgment," determines that the "state court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citing *Williams*, 529 U.S. 411).

There is scarce case law addressing whether, under § 2254(d)(2), a state court's decision was based on "an unreasonable determination of the facts." In *Wood v. Allen*, 558 U.S. 290, 301 (2010), the Supreme Court held that a state-court factual determination is not "unreasonable" just because the federal habeas court would have reached a different conclusion.[5] In *Rice v. Collins*,

---

[5] In *Wood*, the Supreme Court granted certiorari to resolve whether, to satisfy § 2254(d)(2), "a petitioner must establish only that the state-court factual determination on which the decision was based was 'unreasonable,' or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence." *Wood*,

10

546 U.S. 333 (2006), the Court explained that "[r]easonable minds reviewing the record might disagree" about the factual finding in question, "but on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice*, 546 U.S. at 341–42.

The Sixth Circuit has described the § 2254(d)(2) standard as "demanding but not insatiable" and has emphasized that, under § 2254(e)(1), the federal court presumes the state court's factual determination to be correct absent clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d at 301, 308 (6th Cir. 2010). A federal court will not overturn a state court decision on factual grounds unless objectively unreasonable given the evidence presented during the state court proceeding. *Id.*; *see also Hudson*, 421 F. App'x at 624 (same).

## III. Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established the standard by which courts analyze a claim that ineffective assistance of counsel deprived a defendant of his Sixth Amendment right to counsel. See 466 U.S. 668, 687 (1984). To succeed on this claim, a petitioner must prove two elements: 1) that counsel's performance was deficient, and 2) "that the deficient performance prejudiced the defense." *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance." *Id.* at 689.

---

558 U.S. at 299. The Court found it unnecessary to reach that issue and left it open "for another day." *Id.* at 300–01, 303 (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006) (recognizing that it is unsettled whether there are some factual disputes to which § 2254(e)(1) does not apply)).

11

The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

To prove prejudice, a petitioner has to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.[6] "A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694. It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' [*Strickland*,] at 693. Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' *Id.*, at 687." *Harrington*, 562 U.S. at 104 (citing *Strickland*); *see also Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out'" a more favorable outcome to prevail. "Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

Even more, federal courts reviewing an ineffective assistance claim accord a state-court decision higher deference under 28 U.S.C. § 2254(d). The Supreme Court made this point emphatically.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*], 556 U.S., at 123, 129 S. Ct. at 1420 [(2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

---

[6] If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Strickland*, 466 U.S. at 697.

*Harrington*, 562 U.S. at 105.

"There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*, 501 U.S. at 752 (internal citations omitted). So attorney error cannot constitute "cause" for a procedural default "because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Id.* at 753 (internal quotation marks omitted). When the State has no constitutional obligation to ensure that a prisoner has competent counsel, the petitioner bears the risk of attorney error. *Id.* at 754.

In 2012, the Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1 (2012) which recognized a narrow exception to the rule in *Coleman*, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding . . . ." *Martinez*, 566 U.S. at 17. In those cases, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance [of counsel] at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* What is more, the Supreme Court emphasized that "[t]he rule of *Coleman* governs in all but the limited circumstances recognized here. . . . It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons." *Id.* The requirements that a petitioner must satisfy to excuse a procedural default under *Martinez* are:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the

13

"ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (emphasis and alterations in original).

In *Martinez*, the Supreme Court considered an Arizona law that did not permit petitioners to raise ineffective assistance claims on direct appeal. *Martinez*, 566 U.S. at 4. Later in *Trevino*, 569 U.S. at 429, the Supreme Court extended its holding in *Martinez* to states where a "procedural framework, by reason of its design and operation, make[] it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . . ." *Trevino* modified the fourth *Martinez* requirement for overcoming a procedural default. The holdings in *Martinez* and *Trevino* apply to Tennessee prisoners. *Sutton v. Carpenter*, 745 F.3d 787, 790 (6th Cir. 2014).

Now the Court will turn to the analysis of Petitioner's claims here.

## PETITIONER'S FEDERAL HABEAS CLAIMS

The issues in the amended § 2254 Petition are difficult to decipher and read as follows:

1. Breached Plea, due to the State of TN breaching the structure and using the incorrect sentence effective date missing credits (ECF No. 40 at PageID 472);

2. Sufficiency of the evidence claim False evidence to convict and issue an indictment (*id.* at PageID 473);

3. Denied a Jury trial, cross examination and a legal counsel trial court TRICKED me to waive Fundamental Rights as a American (*id.* at PageID 475); and

4. Brady violation; Ineffective Assistance of Counsel on Post-conviction counsel (*id.* at PageID 477).

## ANALYSIS

I.  **Issue 1**

Petitioner alleges:

14

> I, waived my rights to a Jury trial and forced to self-incriminate myself 5th Amnd. to a breached plea agreement. I did "not" receive my part of the 30% Release eligibility which was a promise by the State of TN. I entered the plea with the full understanding that the 4 years would run first and it would be 12 years at 30% I also was robbed by the state of TN when they refuse to withdraw the plea agreement the breach voids the contract they robbed me for $225.00 cash [sic]

(ECF No. 40 at PageID 472.) Respondent argues that, if Petitioner contends that the State failed to keep a commitment about a sentence recommendation, Petitioner is barred from bringing this claim under the procedural default doctrine and the claim lacks merit. (ECF No. 77 at PageID 1495–96.) Respondent further contends that none of the allegations raised here state proper federal habeas claims. (*Id.* at PageID 1496.)

Petitioner's post-conviction record shows that, although he challenged the voluntary nature of his guilty plea during the post-conviction appeal, he failed to raise a claim that the State breached the plea agreement by failing to fulfill a promise. The TCCA did not review that aspect of Issue 1 so that is not exhausted. As a result, this claim is now barred from review by procedural default and is **DENIED**.

The computation of Petitioner's prison term is a matter of state law that a petitioner may not present for federal habeas corpus review. *Kipen v. Renico*, 65 F. App'x 958, 959 (6th Cir. 2003) (citing *Estelle v. McGuire*, 502 U.S. 62, 68 (1991)). Fines or restitution orders fall outside the scope of the federal habeas statute because they do not satisfy the "in custody" requirement of a proper habeas claim. *See United States v. Watroba*, 56 F.3d 28 (6th Cir.1995) (holding that § 2255 does not grant subject matter jurisdiction over restitution orders); *Michaels v. Hackel*, 491 F. App'x. 670, 671 (6th Cir. 2012) (stating that a fine is not cognizable under § 2254 and citing *Watroba*, 56 F.3d at 29); *see also Bailey v. Hill*, 599 F.3d 976, 979 (9th Cir. 2010) (holding that fines and restitution orders are improper claims under § 2254); *Washington v. Smith*, 564 F.3d 1350, 1350–51 (7th Cir. 2009) (same); *Tinder v. Paula*, 725 F.2d 801, 804 (1st Cir. 1984)

(collecting cases); Randy Hertz & James S. Liebman, 1 *Federal Habeas Corpus Practice and Procedure* § 8.2(e) (6th ed. 2012). "[C]ollateral relief from a noncustodial punishment—such as a fine or restitution order—is not made readily available to a defendant just because he happens at that time to also be subject to custodial penalties." Brian R. Means, *Federal Habeas Manual* § 1:21 (2012 ed.). These aspects of Issue 1 are improper and are **DENIED**.

## II. Issue 2

Petitioner alleges:

> The Homic(id)e witness statement gives and pin point date of the alleged crime for solicitation. The states pick False dates to use to give them improper gain. (2) New statement 8 days after by the same witness admitting that he lied to get charged drop(p)ed on pending sentence. (3) the indictment reads incorrect and the Judgments read a incorrect date of offense. The original Homicide Statement was flase but still used to indict petitioner only to get a invantage to aggravated assault [sic]

(ECF No. 40 at PageID 473.) Respondent argues that Petitioner waived these claims by his guilty pleas and are barred by the procedural default doctrine. (ECF No. 77 at PageID 1497–98.)

The TCCA held that Petitioner entered a knowing and voluntary guilty plea. *Delk v. State*, 2016 WL 4189718, at *5–*6. Nothing in this petition directly challenges or shows that the TCCA's decision contradicted or involved an unreasonable application of federal law. Neither does Petitioner show that the TCCA's decision was based on an unreasonable determination of the facts. By voluntarily pleading guilty, Petitioner waived all constitutional claims predating his guilty plea. *Tollet v. Henderson*, 411 U.S. 258, 266–67 (1973). The Court therefore **DENIES** Issue 2.

## III. Issue 3

Petitioner alleges:

> Im' convicted without jury trial. The case has not been properly disposed and trial counsel has abandon the case. The state deprived cross-examination of the

> witnesses. The State used deceit and fraud to have me waive my constitutional rights to something I never received only to gain an improper advantage over the case. The State also charged me $225.00 telling me that they would fulfill agreements [sic]

(ECF No. 40 at PageID 475.) Respondent argues that the procedural default doctrine bars this claim because Petitioner pleaded guilty. (ECF No. 77 at PageID 1498.)

This Court addressed Petitioner's monetary claim in its discussion of Issue 1. Petitioner should have raised the remaining claims here on direct appeal. But because Petitioner pleaded guilty, there was no appeal. Had he tried to raise these claims during the post-conviction proceedings, Tenn. Code Ann. § 40-30-106(g), would have prohibited review under the doctrine of waiver.

The procedural default doctrine exhausted these claims and Petitioner has no avenue remaining for presenting them, given the state statute of limitations on state post-conviction relief. This procedural default operates as a complete and independent procedural bar to federal habeas review of these claims. Petitioner has presented no evidence that requires review of Issue 3 to prevent a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986). Issue 3 is therefore barred by procedural default. The Court then **DENIES** Issue 3.

## IV. Issue 4

Petitioner next contends:

1. State withheld a statement made by Larry Lackl which he admits that he lied only to get a time cut.

2. Post-conviction counsel did not provide the record for the appeal court's causing the case to be dismissed on appeal in a attempt to help the trial courts keep their conviction. The error was intently made by counsel only to have the appeal denied [sic]

(ECF No. 40 at PageID 477.) Respondent argues that, because Petitioner pleaded guilty, he cannot now bring this alleged *Brady* claim in federal court and his claim of ineffective assistance

17

by post-conviction counsel fails to state a proper ground for relief here.  (ECF No. 77 at PageID 1500–01.)

Petitioner did not show that the State withheld *Brady* material during the post-conviction hearing and did not raise a claim of a *Brady* violation on post-conviction appellate review.  If he contends ineffective assistance of post-conviction counsel caused the default of this claim, *Martinez* does not cover claims that ineffective assistance of post-conviction appellate counsel excuse the procedural default of a claim of ineffective assistance by appellate counsel.  *See Hodges v. Colson*, 727 F.3d at 531.  This Court finds no reason to extend the holding in *Martinez* to claims beyond ineffective assistance of trial counsel.  Petitioner's *Brady* claim is therefore barred by procedural default and is **DENIED**.

If Petitioner intended to raise also a freestanding claim of ineffective assistance of post-conviction counsel, ineffective assistance of post-conviction counsel does not constitute grounds for habeas relief.  28 U.S.C. § 2254(i).  Even if that were not the case, the Supreme Court has long held that "[t]here is no right to counsel in state post-conviction proceedings" and therefore no right to effective post-conviction counsel.  *Coleman*, 501 U.S. at 752 (citations omitted). *Martinez* and *Trevino* did not abrogate that rule.  Rather, the Supreme Court recognized that the ineffective assistance of post-conviction counsel may, in narrow circumstances, provide "cause" for the procedural default of a claim of ineffective assistance of trial counsel.  *Martinez*, 566 U.S. at 8–16.  Petitioner's claim of ineffective assistance of post-conviction counsel does not provide a cognizable ground for habeas relief and is **DENIED**.

In sum, the issues Petitioner raised in his amended petition are barred by procedural default and are improper here.  The Court therefore **DISMISSES WITH PREJUDICE** the petition.  Judgment will be rendered for Respondent.

## APPELLATE ISSUES

A petitioner is not entitled to appeal a district court's denial of his § 2254 Petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003). The Court has to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

The Court may issue a COA only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must reflect the specific issue or issues that satisfy the required showing. 28 U.S.C. § 2253(c)(2)–(3). A petitioner makes a "substantial showing" when he shows that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (holding a prisoner must show that reasonable jurists could disagree with the district court's resolution of his constitutional claims or that the issues presented warrant encouragement to proceed any more).

A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011) (same). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Slack*, 537 U.S. at 337).

Here, there can be no question that the claims in this petition are barred by procedural fault and not cognizable. Because any appeal by Petitioner on the issue raised in this petition does not deserve attention, the Court **DENIES** a certificate of appealability.

And for the same reasons the Court denies a certificate of appealability, the Court also finds that any appeal would not be taken in good faith. The Court therefore **CERTIFIES**, under Fed. R. App. P. 24(a), that any appeal here would not be taken in good faith. So the Court **DENIES** leave to appeal in forma pauperis.[7]

**SO ORDERED**, this 2nd day of March, 2020.

      s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

---

[7] If Petitioner files a notice of appeal, he must pay the full $505 appellate filing fee or move to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days of the date of the entry of this order. *See* Fed. R. App. P. 24(a)(5).